UNITED STATES DISTRICT COURT      O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| EDWARD BENAVIDES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-08-105 |
| | § | |
| LAREDO MEDICAL CENTER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion for More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e). [Dkt. No. 11]. Upon due consideration of the pleadings, responsive filings, and governing law, the Court **DENIES** Defendant's Motion to Dismiss and Motion for More Definite Statement.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On July 31, 2008, Plaintiff Edward Benavides ("Plaintiff") commenced this action against Defendant Texas Hospital Company L.P. ("Defendant"),[1] alleging violations of Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and Chapter 121 of the Texas Human Resources Code ("THRC"). [Dkt. No. 1].

#### A.  Factual Allegations in Benavides's Amended Complaint

Plaintiff is a deaf individual currently residing in Laredo, TX. [Dkt. No. 20, ¶¶ 5-6]. Plaintiff purportedly "has a serious heart condition that led to the installation of a pacemaker in January 2008." [*Id*., ¶ 5]. In addition to having heart problems, Plaintiff alleges that he is diabetic. [*Id*.]. Defendant is a corporation operating the Laredo Medical Center, a hospital

---

[1] Defendant asserts that it has been misnamed as Laredo Medical Center and that the correct name for Defendant is Laredo Texas Hospital Company L.P.

located in Laredo, TX. [*Id*., ¶ 3]. According to Plaintiff, Defendant's hospital is the hospital closest to his home and "[h]e has used Defendant's hospital for many years." [*Id*., ¶ 6].

On April 7, 2008, Plaintiff allegedly required the services of Defendant's hospital "after going unconscious." [*Id*., ¶ 7]. After regaining consciousness, Plaintiff requested that the Defendant hospital provide him with a sign-language interpreter "to explain his condition, and treatments being administered." [*Id*.]. Defendant failed to comply with this request and then allegedly proceeded to treat and diagnose Plaintiff "without [providing him] knowledge of his condition." [*Id*.].

On June 22, 2008, Plaintiff was allegedly taken to Defendant's hospital "because of severe coughing and a fluttering heart." [*Id*., ¶ 8]. Upon his arrival, Plaintiff requested that Defendant provide him with a sign-language interpreter. [*Id*., ¶ 9]. Plaintiff stayed at Defendant's hospital for five days, yet Defendant purportedly failed to comply with Plaintiff's request for an interpreter. [*Id*.]. Instead, Plaintiff alleges that two nurses attempted to communicate with him through written notes. [*Id*., ¶ 10]. These attempts to communicate were unsuccessful, however, "due to the complexity of the information, and [Plaintiff's] limited reading capacity." [*Id*.]. Although "one nurse wrote to him in English, [] the other [did so] in Spanish," but Plaintiff does not speak or read Spanish. [*Id*.]. Consequently, during his five-day stay, Benavides avers that Defendant "never provided effective communication for [Plaintiff] to understand his condition or treatment options." [*Id*., ¶ 11]. According to Plaintiff, "[h]e was diagnosed, had decisions made about his condition, and administered treatment, all while completely unaware of what was happening to him." [*Id*.].

On July 15, 2008, Plaintiff alleges that he was taken to Defendant's hospital "because his heart was not pumping properly." [*Id*., ¶ 13]. He requested a sign-language interpreter and

Defendant's hospital failed to provide him with such an interpreter.  [*Id*., ¶ 14].  After remaining at Defendant's hospital for several hours, Plaintiff alleges that he was transferred to a hospital in San Antonio, TX.  [*Id*.].  Plaintiff was informed that he was being transferred to San Antonio "in part due to Laredo Medical Center's lack of interpretive services."  [*Id*.].  Thereafter, on July 31, 2008, Plaintiff initiated this cause of action against Defendant alleging violations of the ADA, RA, and THRC.  [Dkt. No. 1].

      **B.**      **Defendant's Motions to Dismiss**

On October 6, 2008, Defendant filed the pending Motion to Dismiss For Failure to State a Claim.  [Dkt. No. 11].  Defendant contends that Benavides' claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) on several grounds.  First, Defendant contends that Plaintiff cannot proceed with his suit for injunctive and declaratory relief under Title III of the ADA, the RA, or the THRC because he has failed to demonstrate standing.  [*Id*. at 3-5].  Next, Defendant contends that Plaintiff cannot claim compensatory damages under the RA because he has failed to allege that Defendant's discrimination was intentional.  [*Id*. at 5-6].

Alternatively, Defendant moves for a more definite statement under Federal Rule of Civil Procedure Rule 12(e).  [*Id*. at 6-8].  In support of this motion, Defendant asserts; first, that the factual basis of Plaintiff's original complaint is vague and thus fails to give Defendant fair notice of the basis of Plaintiff's claims; second, that the injunctive and declaratory relief sought by Plaintiff is vague and that Defendant is thus unable to prepare a reasonable response to Plaintiff's claims; and third, that Plaintiff's claim for damages is vague because he has failed to cite any authority allowing recovery for damages.  [*Id*. at 7-8].

On October 27, 2008, Plaintiff timely filed a Response to Defendant's motion.  [Dkt. No. 17].  On this same date, Plaintiff filed an "Unopposed Motion for Leave to File Amended

Complaint."[2]  [Dkt. No. 20].  The Court subsequently granted Plaintiff's motion for leave to file an amended complaint.  [Dkt. No. 23].

## II.  DISCUSSION

### A.  Legal Standard Governing 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Dismissal is warranted when it is clear that a plaintiff "can prove no set of facts in support of his claim that would entitle him to relief."  *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).  In evaluating the sufficiency of the pleadings, a court treats all well-pleaded facts as true, "viewing them in the light most favorable to the plaintiff."  *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)).  A court does not determine whether the plaintiff will ultimately prevail, but rather, whether he may present evidence in support of his claim.  *Id.*  A court should therefore not dismiss a claim unless the plaintiff would not be entitled to relief under "any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.* (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996)).

### B.  Standard for Injunctive Relief under the ADA

Title III of the ADA generally prohibits discrimination against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations or any place of public accommodation . . ."  42 U.S.C. § 12182(a) (2006); *see also McNeil v. Time Ins. Co.*, 205 F.3d 179, 186 (5th Cir. 2000) ("Title III prohibits the owner, operator, lessee, or lessor from denying the disabled access to, or interfering with their enjoyment of, the goods and services of a place of public accommodation.").  In

---

[2] Plaintiff attached his Amended Complaint to the Motion for Leave to File an Amended Complaint.  [Dkt. No. 20].

addition to prohibiting discrimination against individuals with disabilities generally, Title III provides a list of specific requirements. *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005). Specifically, an entity providing public accommodations must "make reasonable modifications on policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privilege, advantages, or accommodations to individuals with disabilities . . ." 42 U.S.C. § 12182(b)(2)(A)(ii). Similarly, such an entity must also "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . ." *Id.* § 12182(b)(2)(A)(iii). As set forth in 42 U.S.C. § 12181(7)(F), hospitals are considered entities providing public accommodations.

Title III allows a plaintiff to sue for injunctive relief—it does not allow private parties to sue for damages. *See* 42 U.S.C. § 12188(a); *see also Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997) ("According to 42 U.S.C. § 12188, the plaintiff is limited to injunctive relief . . ."). "To obtain standing for injunctive relief, a plaintiff must show that there is reason to believe that he would directly benefit form (sic) the equitable relief sought." *Plumley*, 122 F.3d at 312 (citing *Hoepfl v. Barlow*, 906 F.Supp. 317, 321 (E.D.Va. 1995)). Stated in other terms, "a plaintiff must face a threat of present or future harm." *Id.* (citing *Hoepful*, 906 F.Supp. 320). In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court held that in order for a plaintiff to pursue a claim for injunctive relief based on an alleged past wrong, "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 102 (citations omitted); *Plumley*, 122 F.3d at 312. The *Lyons* Court also clarified that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing,

present adverse effects.'" 461 U.S. at 102 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). In the Fifth Circuit, the *Lyons* standard is applied to claims for injunctive relief under the ADA. *See Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563-64 (5th Cir. 1998) (finding that plaintiff alleging violations of the ADA lacked standing because he failed to assert any likelihood that he would suffer another statutory violation in the future); *see also Plumley*, 122 F.3d at 312 (citing *Lyons*, 461 U.S. at 111) ("[A] plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that he will be wronged again.")

When a disabled plaintiff alleges that he was denied accommodations at a hospital in violation of the ADA, courts have considered several factors to determine whether the plaintiff has alleged or established a "real or immediate threat" of injury, including: whether the plaintiff resides within close proximity to the defendant's hospital; the number of prior visits alleged by the plaintiff; whether the plaintiff has a medical condition that will likely require; attention in the future; and whether the defendant hospital has changed its policy so as to accommodate the plaintiff in the future. *See, e.g., Freydel v. New York Hosp.*, No. 00-7108, 2000 WL 1836755, at *6 (2d Cir. Dec. 13, 2000) (denying standing where, despite plaintiff's allegation that she suffered from a chronic condition, plaintiff could not show that she would be referred to the defendant hospital in the future because a number of tertiary care centers were located closer to plaintiff's home); *see also Loeffler v. Staten Island Univ. Hosp.*, Civ. No. 95-4549, 2007 WL 805802, at *9-10 (E.D.N.Y. Feb. 27, 2007) (denying standing where deaf plaintiff did not show that she suffered from a condition requiring treatment in the future and the defendant hospital amended its policy of providing interpretive services); *Gillespie v. Dimensions Health Corp.*, 369 F.Supp. 2d 636 (D.Md. 2005) (finding standing where deaf plaintiffs alleged living within

close proximity to defendant hospital and that defendant hospital denied repeated requests for interpretive services); *Mayberry v. Von Valtier*, 843 F.Supp. 1160, 1166-67 (E.D.Mich. 1994) (finding standing where plaintiff alleged that defendant physician denied request for interpretive services on three occasions and also expressed an intention to refuse to provide interpretive services in the future). *But see Naiman v. New York Univ.*, Civ. No. 95-6469, 1997 WL 249970, at *5 (S.D.N.Y. May 13, 1997) (finding that deaf plaintiff's amended complaint failed to establish standing where plaintiff did not show that he would require services of the defendant hospital in the future); *Constance v. State Univ. of New York Health Sci. Ctr. at Syracuse*, 166 F.Supp. 2d 663, 667 (N.D.N.Y 2001) (denying standing where plaintiffs stated they generally use a different hospital and only traveled to defendant hospital for a specific treatment and had not been back since); *Aikins v. St. Helena Hosp.*, 843 F.Supp. 1329, 1334 (N.D.Cal. 1994) (denying standing where plaintiff did not establish she is likely to use defendant hospital in area and only showed that she owned a mobile home near the defendant hospital and stayed at the home "for several days each year").

In this case, the parties do not dispute that Plaintiff has a disability and that Defendant's hospital is a place of public accommodation. Rather, Defendant contends that Plaintiff has failed to allege an injury in fact and, therefore, does not have standing to seek injunctive relief. [Dkt. No. 11 at 3-5]. In response, Plaintiff asserts that the facts alleged in his amended complaint show a real and immediate threat of future injury. [Dkt. No. 17 at 6]. The Court agrees with Plaintiff's assertion. Through his amended complaint, Plaintiff has sufficiently pleaded facts to show that he will likely require the services of Defendant's hospital again in the future. As an initial matter, the Court notes that Plaintiff is a citizen of Laredo, TX. [Dkt. No. 20 at ¶ 6]. Plaintiff alleges that Defendant's hospital is the hospital closest to Plaintiff's residence. [*Id.*].

According to Plaintiff, he has "used Defendant's hospital for many years." [*Id.*]. Moreover, Plaintiff alleges that he required the services of Defendant's hospital three times in the span of four months, on April 7, 2008, June 22, 2008, and July 15, 2008. Unlike the plaintiff in *Loeffler*, 2007 WL 805802 at *10, Plaintiff purportedly suffers from two distinct medical conditions. According to Plaintiff, he has a "serious heart condition that led to the installation of a pacemaker." [Dkt. No. 20, ¶ 5]. Plaintiff is also diabetic. [*Id.*]. Plaintiff thus attended Defendant's hospital twice for complications related to his heart condition. [*Id.*, ¶¶ 8, 13]. Indeed, Plaintiff does not allege that he required the Defendant's services as a result of a singular injury: rather, they are conditions which increase the likelihood that he will require medical attention in the future.

Furthermore, Plaintiff has alleged facts sufficient to show that Defendant's hospital will, in all likelihood, fail to provide him with interpretive services again. In his amended complaint, Plaintiff alleges that, during each of his three visits to Defendant's hospital, he requested that he be provided with a sign-language interpreter to explain his condition and the treatments being administered to him. [*Id.*, ¶¶ 7, 9, 14]. During his five-day stay at the hospital, two nurses allegedly attempted to write notes to communicate with him. [*Id.*, ¶ 10]. During such time, Defendant never provided effective communication to Plaintiff so that he could understand his condition or treatment options. [*Id.*, ¶ 11]. During the July 15 visit, Defendant told Plaintiff that he was being transferred to a hospital in San Antonio, "in part due to [Defendant's] lack of interpretive services." [*Id.*, ¶ 14]. Since Plaintiff alleges that Defendant denied his request for services on three occasions, that nurses attempted to communicate with him through hand-written notes (unsuccessfully), and that Defendant stated it did not have interpretive services, the Court finds that Plaintiff has pleaded facts sufficient to show that he is likely to attend the

hospital again and that he will likely be denied interpretive services. *See Gillespie*, 369 F.Supp. 2d at 646 (finding standing where plaintiffs alleged that, on multiple occasions, defendant hospital "[d]enied requests to provide live, in-person interpreters, and instead, has attempted to utilize alternative, and allegedly, ineffective methods of communication").

In support of its contention that Plaintiff has failed to plead an actual or imminent injury, Defendant directs the Court to *Falls v. PG Hosp. Ctr.*, Civ. No. A-97-1545, 1999 WL 33485550, at *1 (D.Md. March 16, 1999). Defendant's reliance on *Falls* is misguided, however. In *Falls*, a deaf patient alleged violations of Title II and Title III of the ADA, based on the defendant hospital's failure to provide her with a sign language interpreter during her stay. *Id*. The *Falls* court concluded that the plaintiff could not show that she faced a real and immediate threat of future harm, in part, because there was no evidence that the patient was likely to return to the hospital. *Id*. at *6 ("Indeed, [Plaintiff's mother] stated in her deposition that she does not want to use the services of [the defendant's hospital] again, even if [Plaintiff] is 'near death.'"). In this case, however, Plaintiff has expressed no affirmative intention to avoid defendant's hospital. On the contrary, Plaintiff has pleaded facts indicating that he is likely to use Defendant's hospital again in the future. As stated, Plaintiff has pleaded that he suffers from two conditions that are likely to require attention; that Defendant's hospital is the hospital closest to his home;[3] that he has been denied a request for interpretive services during three separates visits; and that the Defendant hospital has indicated that it has no policy to accommodate deaf persons. For these reasons, the Court finds that Plaintiff has sufficiently pleaded a real and immediate threat of future injury. Consequently, Plaintiff has standing to pursue injunctive relief, as well as declaratory relief, under Title III of the ADA. *See Plumley*, 122 F.3d at 312 (citing *Lawson v.*

---

[3] The Court can also take judicial notice that Defendant's hospital is one of only two hospitals in Laredo, TX.

*Callahan*, 111 F.3d 403, 405 (5th Cir. 1997) (noting that, in order to obtain declaratory relief, a plaintiff "[m]ust show that an actual case or controversy under the ADA exists")).

### C. Section 504 of the Rehabilitation Act

Section 504 of the RA provides that "[n]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a) (2006). A "program or activity" under the RA includes "all of the operations of an entire corporation, partnership, or other private organization, or an entire sole proprietorship which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation, any part of which is extended Federal financial assistance." *Id*. § 794(b)(3)(A). The jurisprudence interpreting the ADA is applicable to the RA. *See Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir.) *cert. denied* 531 U.S. 959 (2000) (citation omitted) ("Jurisprudence interpreting either section is applicable to both."); *see also Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir.), *cert. denied*, 540 U.S. 810 (2003) (citation omitted) ("The language in the ADA generally tracks the language set forth in the RA.").

In the Fifth Circuit, "[a] plaintiff asserting a private cause of action for violations of the . . . RA may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle*, 302 F.3d at 574 (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)). In *Delano-Pyle*, the plaintiff alleged violations of the RA, asserting that the defendant county failed to accommodate his hearing impairment during a field sobriety test. During the administration of plaintiff's sobriety test, a county deputy gave the plaintiff instructions despite knowing that plaintiff had a hearing impairment; that the form of

communication used was ineffective; and that he did not know whether plaintiff understood his rights as they were verbally communicated to him. *Id*. at 575-76. The Fifth Circuit concluded that the facts established during the plaintiff's trial supported the jury's finding of intentional discrimination. *Id*. at 576; *see also Salinas v. City of New Braunfels*, 557 F.Supp. 2d 777 (W.D.Tex. 2008) (relying on *Delano-Pyle* and finding a fact issue as to discriminatory intent where evidence showed the absence of a policy for dealing with the hearing-impaired and whether the hospital attempted to provide interpreters).

Here, Defendant contends that Plaintiff's claim for compensatory damages must fail because Plaintiff has failed to allege that the purported discrimination was intentional. Defendant's contention is not persuasive. [Dkt. No. 11 at 5-6]. As stated, Defendant's hospital allegedly diagnosed and treated Plaintiff, on three occasions, after denying his request for interpretive services. Though nurses attempted to communicate with him through hand-written notes in English and Spanish, Plaintiff purportedly has trouble reading complex English sentences and cannot read or speak Spanish. [Dkt. No. 20 at ¶ 10]. These alleged attempts to communicate failed to satisfy Defendant's obligation to provide accommodations for Plaintiff's disability. Moreover, since Plaintiff was informed during his third visit to Defendant's hospital that it lacked interpretive services, it is apparent that Defendant hospital lacks a policy to accommodate individual with hearing disabilities. Plaintiff has thus sufficiently pleaded that Defendant willfully denied him access to interpretive services. Viewing these facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently pleaded that Defendant willfully and intentionally treated Plaintiff without providing accommodations for his disability.

Defendant seemingly contends that in order to show intentional discrimination, Plaintiff must plead that Defendant exhibited a discriminatory animus towards Plaintiff during his stays at

the Defendant's hospital. [*See* Dkt. No. 11 at 6]. None of the cases provided by Defendant support this contention, however. For example, in *Delano-Pyle*, the Fifth Circuit did not look to whether a discriminatory animus was exhibited towards Plaintiff because of his disability; rather, the court focused on whether the officers ignored his need for accommodations. *See* 302 F.3d at 575-6; *see also Salinas*, 557 F.Supp. 2d at 788 (finding a fact issue as to intentional discrimination for the purposes of a RA claim where officers were aware that their unsuccessful communication attempts were harming the defendant; officers ignored advice regarding the process and importance of acquiring an interpreter; and officers made no attempt to contact an interpreter). Accordingly, Defendant has failed to cite authority requiring Plaintiff to allege that Defendant exhibited a discriminatory animus towards him. Consequently, having concluded that Plaintiff can show discriminatory intent under *Delano-Pyle*, the Court finds that Plaintiff may proceed with his claim for damages under the RA.

This finding is congruent with the conclusions of other courts which have held that a discriminatory intent may be established where the defendant willfully denied accommodations. In *Bartlett v. N.Y. State Bd. of Law Exam's*, 970 F.Supp. 1094 (S.D.N.Y.), *overruled on other grounds*, 226 F.3d 69 (2d. Cir. 2000), the court considered the nature of discriminatory intent in the context of a claim for compensatory damages in accommodation cases under the RA:

> ". . . [T]he concept of intent in an accommodations case such as this one is markedly different from the concept of intent in employment discrimination cases or in cases involving a palpable bias or animus against disabled persons. In those cases, there is a negative action taken toward an employee because of his or her disability (most often a termination or an alteration in the terms or conditions of employment) or an adverse action taken against a group of disabled individuals because of their disability. In the instant case, however, as in all accommodations cases, the concept of intent is more difficult to pinpoint because it is the defendants' failure to provide the plaintiff with an advantage which is the very subject of the "discrimination."

*Id.* at 1149. The *Bartlett* court further concluded that "the question of intent in accommodations cases does not require that plaintiff show that defendants harbored an animus towards [the plaintiff] . . . ." *Id.* at 1151. Instead, "intentional discrimination is shown by an intentional, or willful, violation of the Act itself." *Id.*; *see also Falls*, 1999 WL 33485550, at *10 ("[W]hile defendants may have had the best of intentions, and while they may have believed themselves to be within the confines of the law, they nevertheless intentionally violated . . . the [RA] by willfully withholding from plaintiff the reasonable accommodations to which she was entitled under the law."); *see also Naiman*, 1997 WL 249970, at *5 (S.D.N.Y. 1997) ("Assuming that intent is a prerequisite for monetary relief under the [RA], [plaintiff's] allegation that he requested a qualified interpreter, which was not provided, coupled with the absence of any allegation that [the defendant] attempted to provide [the plaintiff] with effective communication, sufficiently alleges attempt."). As stated, Plaintiff has similarly pleaded facts sufficient to show that Defendant intentionally failed to provide accommodations to him; consequently, Plaintiff has sufficiently alleged that Defendant discriminated against him intentionally and may proceed with his claim for damages under the RA.

    **D.**    **Federal Rule of Civil Procedure 12(e) Motion**

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Such a motion "must point out the defects complained of and the details desired." *Id.* Rule 12(e) is read in conjunction with the notice pleading requirements of Federal Rule of Civil Procedure 8(a). *See Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 131-32 (5th Cir. 1959). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the leader is entitled to relief."

The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The standard of notice pleading operates in conjunction with liberal discovery rules and summary judgment motions to ascertain genuine factual disputes and viable legal theories. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Accordingly, a Rule 12(e) motion should only be granted when a pleading is so vague and ambiguous that a responsive pleading cannot be framed. *See Mitchell*, 269 F.2d at 131-32. Where a pleading does not suffice to give a defendant proper notice of claims asserted against him, he may move for dismissal for a more definite statement pursuant to Rule 12(e). *Swierkiewicz*, 534 U.S. at 514.

Rule 12(e) is not a tool to obtain information that could otherwise be obtained during the discovery process. *See Mitchell*, 269 F.2d at 132 (noting that "a motion for more definite statement is not to be used to assist in getting the facts in preparation for trial as such."). Courts generally disfavor motions for more definite statement. *See Wesley v. Dallas Indep. Sch. Dist.*, 2009 WL 193786, Civ. No. 3:08-2025, at *3 (N.D.Tex. Jan. 27, 2009) (citing *Russell v. Grace Presbyterian Village*, Civ. No. 3:05-30, 2005 WL 1489579, at *3 (N.D.Tex. June 22, 2005).

In this case, the claims asserted in Plaintiff's amended complaint are not so vague and ambiguous so as to require another amended complaint—the facts alleged are sufficient for Defendant to formulate a response. As an initial matter, several of the factual clarifications sought by Defendant are set forth in Plaintiff's Amended Complaint—i.e., the dates that he attended Defendant's hospital and was denied interpretive services, the method of communication with Defendant's nurses, and how the attempts at communication were

ineffective. Plaintiff's Amended Complaint does not allege other facts specified in Defendant's Rule 12(e) motion, including the time when he requested an interpreter during his visits; whether Defendant attempted to comply with his request; and the time Defendant took to comply. Defendant has failed to show, however, why these facts could not be obtained through the discovery process. The Court therefore concludes that Plaintiff's amended complaint pleads sufficient facts for Defendant to formulate a response.

Defendant also contends that the factual basis for Plaintiff's request for injunctive and declaratory relief is vague. In short, the Court finds that this contention is also without merit. Defendant contends that Plaintiff has not stated whether the discrimination is on-going; if there is a real or immediate threat that he will suffer injury; or how he knows he will be a patient of Defendant's hospital in the future. As stated, however, Plaintiff's Amended Complaint is sufficient to show that he faces a real and immediate threat of injury and will likely require the services of Defendant's hospital in the future.

Finally, Defendant contends that Plaintiff has failed to provide authority allowing for the recovery of damages. As stated, however, Plaintiff's Amended Complaint alleges facts sufficient to show that the failure of the Laredo Medical Center to provide him with services was intentional. Moreover, since Plaintiff may proceed with his claims for injunctive relief and damages under the ADA and the RA, he can also claim damages under the THRC, which provides for a minimum of $100 in damages. Consequently, Defendant's Motion for More Definite Statement under Rule 12(e) is **DENIED**.

## III.   CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED**.  [Dkt. No. 11].   Defendant's Motion for More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e) is also **DENIED**.  [Dkt. No. 11].

IT IS SO ORDERED.

Done this 18th day of June, 2009, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**